## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEROY W. COATES,** | : | **CIVIL ACTION NO. 1:07-CV-0424** |
| **Petitioner** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **KAREN F. HOGSTEN, Warden,** | : | |
| **Respondent** | : | |

### MEMORANDUM

Leroy W. Coates ("Coates"), an inmate currently confined at the Allenwood Federal Correctional Institution in White Deer, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Coates challenges certain actions taken by the United States Parole Commission ("Commission") and the United States Bureau of Prisons ("BOP").  Specifically, Coates alleges that he should be released from custody because: (1) his ten year sentence expired in October 1990 and his continued incarceration violates the Ex Post Facto Clause of the United States Constitution, (2) he was denied counsel at his dispositional and revocation hearings, and (3) he was not granted a revocation hearing within ninety days of his release into federal custody.  For the reasons that follow, the petition will be dismissed.

## I.   Statement of Facts

On May 16, 1975, in the United States District Court for the District of Maryland, Coates received a ten-year prison sentence after pleading guilty to bank robbery.  (Doc. 1 at 3.)  Coates was paroled to the District of Columbia on June 6,

1980 and was to remain under parole supervision until April 12, 1985.  (Doc. 2 at 2; Doc. 7 at 2.)

On January 11, 1982, Coates was sentenced to thirty-five years by the Prince George's County Circuit Court for assault with intent to murder and armed robbery.  (Doc. 2 at 2; Doc. 7, Ex. 5.)  The offenses that formed the basis of Coates' state conviction also constituted violations of his federal parole.  (See Doc. 7, Ex. 3.)  Accordingly, on March 1, 1982, the Commission issued a warrant charging Coates with violating several conditions of his supervision.  (Doc. 7 at 2; Doc. 7, Exs. 3, 4, 5.)  Because Coates was already in state custody, the Commission instructed the United States Marshals Service to place its warrant as a detainer while Coates served his state sentence.  (Doc. 7 at 2; Doc. 7, Ex. 5.)

On September 26, 1983, the Commission conducted a dispositional review of its detainer.  (Doc. 7, Ex. 6.)  The Commission concluded that the detainer would stand and that a dispositional revocation hearing would be conducted "subsequent to January, 1984, or upon [Coates'] return to Federal Custody, whichever comes first."  (Id.)  On February 29, 1984, the Commission conducted the scheduled dispositional revocation hearing.  (Doc. 7, Ex. 7.)  The Commission noted that although Coates was seemingly cooperative, he "committed a very serious offense, in which a police officer was shot."  (Id.)  In fact, this was the second time that Coates had "participated in a crime where shots were fired at pursuing police."  (Doc. 7, Ex. 8.)  Accordingly, the Commission ordered that Coates' parole be revoked and that he receive no credit for time spent on parole.  (Id.)  The

Commission further ordered that the unexpired portion of Coates' federal sentence "commence upon [his] release from state custody or upon federal reparole to [his] state sentence, whichever comes first." (Id.)

On November 4, 1994, a ten year reconsideration hearing was held while Coates was still in state custody. (Doc. 7, Ex. 9.) The Commission noted that Coates had not "utilized the 12 years that he has been in confinement to the best of his ability and overall the parole violation behavior was very serious." (Id.) Therefore, the Commission reaffirmed its prior recommendation that Coates serve the unexpired portion of his federal sentence upon his release from state custody. (Id.) The Commission, departing above Coates' guideline range, also scheduled a fifteen year reconsideration hearing for November 2009. (Id.)

On September 30, 2005, Coates was released from his state sentence, and the Commission's warrant was executed. (Doc. 7, Ex. 12.) A statutory interim hearing was conducted on May 3, 2006. (Doc. 7, Ex. 13.) The Commission recommended that Coates continue to serve until the expiration of his sentence on December 31, 2008. (Doc. 7, Exs. 13, 14.) Coates did not file an administrative appeal of the Commission's decision. Instead, Coates filed the instant petition on March 6, 2007. (Doc. 1.) The petition has been fully briefed and is ripe for disposition.

## II.   <u>Discussion</u>

28 U.S.C. § 2241 provides district courts with authority to order the release of prisoners from unconstitutional conditions of confinement. <u>See, e.g.</u>, <u>Moscato v. Fed. Bureau of Prisons</u>, 98 F.3d 757, 758-60 (3d Cir. 1996). Generally, federal

prisoners are required to exhaust their administrative remedies prior to seeking a

writ of habeas corpus pursuant to 28 U.S.C. § 2241.  See id. at 760; see also Callwood

v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) ("[W]e have consistently applied an

exhaustion requirement to claims brought under  § 2241.")  Exhaustion is required

for three reasons: (1) it facilitates judicial review by allowing the appropriate agency

to develop a factual record and to apply its expertise; (2) it conserves judicial

resources; and (3) it fosters administrative autonomy by providing agencies the

opportunity to correct their errors.  Garcia v. Gonzalez, Civ. No. 3:CV-07-0047, 2007

U.S. Dist. LEXIS 8420, at *3 (M.D. Pa. Feb. 6, 2007) (citing Moscato, 98 F.3d at 761-

62).  Exhaustion of administrative remedies, however, is not required where

exhaustion would not promote these goals.[1]

In the instant case, respondent has not challenged Coates' exhaustion of his

administrative remedies; therefore, the court will turn to the merits of Coates'

petition.  See  Soto v. Sherman, No. C.A.05-316, 2006 WL 2583564, at *2-3 (W.D. Pa.

Sept. 6, 2006).  Coates seeks an order of release on the basis that he is being held

"illegally and unlawfully" on an expired federal sentence.  (Doc. 2 at 1.)  Essentially,

Coates alleges that the Commission made a number of errors when calculating his

---

[1] For example, exhaustion is not required where a prisoner demonstrates futility, Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998), where delay would subject the prisoner to irreparable injury, Carling v. Peters, No. Civ. A. 00-CV-2958, 2000 WL 1022959, at *2 (E.D. Pa. July 10, 2000), or where the issue presented by the prisoner involves only statutory construction, Bradshaw v. Carlson, 682 F.2d 1050, 1052-53 (3d Cir. 1981).

reparole date.  These errors include the Commission's decisions to: (1) conduct a

revocation hearing on February 29, 1984, which Coates contends "constructively

executed" his parole violation warrant (Doc. 10 at 5-6); (2) upwardly depart from

reparole guidelines (Doc. 2 at 4); (3) run Coates' federal sentence consecutively with

his state sentence (Doc. 10 at 7); (4) deny Coates counsel at his dispositional and

revocation hearings (Doc. 10 at 2); (5) fail to conduct a revocation hearing within

ninety days of Coates' release into federal custody (Doc. 10 at 4); and (6) deny

Coates statutory good time credit (Doc. 2 at 5).

     A district court's review of a decision issued by the Commission is extremely

deferential.  See Furnari v. Warden, Allenwood Fed. Corr. Inst., 218 F.3d 250, 254

(3d Cir. 2000).  The issue "is not whether the [Commission's decision] is supported

by the preponderance of the evidence, or even by substantial evidence."  Id.

Rather, the dispositive question is whether "there is a rational basis in the record

for the [Commission's] conclusions embodied in its statement of reasons."  Id.

(citation omitted).  The Commission's explanation for its conclusions need not be

comprehensive, addressing each factor and resolving each evidentiary conflict, but

must provide a general overview of the materials considered and the factors

deemed dispositive in the particular case.  See Bd. of Pardons v. Allen, 482 U.S. 369

(1987).  The court should focus its review on the process of decision, rather than the

conclusion.  So long as the Commission has followed appropriate and permissible

criteria, and has not reached an "arbitrary and capricious" finding, the decision

should not be disturbed.  <u>Funari</u>, 218 F.3d at 254.  With the foregoing framework in mind, the court will address Coates' arguments *seriatim*.

### A.   <u>Execution of the Warrant</u>

Coates' primary argument is that he has served his parole violator term because the revocation hearing on February 29, 1984 effectively executed his parole violation warrant.  (Doc. 10 at 4.)  Stated somewhat differently, Coates contends that the Commission is not permitted to conduct a revocation hearing prior to the execution of a parole violator warrant.  (Doc. 10 at 3.)  Coates does not cite, and the court is unaware of, any case that explicitly holds that a revocation hearing cannot precede execution of a parole violation warrant.  <u>Contra</u> <u>United States *ex rel*. Hahn v. Revis</u>, 520 F.2d 632, 637 (7th Cir. 1975) ("We see no reason . . . why a [revocation] hearing cannot precede execution of the [parole violation] warrant."); <u>Cook v. United States Attorney General</u>, 488 F.2d 667, 672 n. 11 (5th Cir. 1974) ("While it would be within the [Parole] Board's discretion to grant a full . . . revocation hearing to a parolee serving an intervening sentence with a detainer lodged against him, the regulations do not impose such a duty on the board.") Instead, the court finds the actions taken by the Commission in the matter *sub judice* both reasonable and permissible under the Commission's regulations and statutory law.  The Commission may issue a parole violation detainer warrant at any time prior to the expiration date of a petitioner's sentence.  <u>See</u> <u>Boswell v. J.J. Parker</u>, 262 F. Supp. 559, 560-61 (M.D. Pa. 1967); <u>Russie v. United States Dep't of Justice</u>, 708 F.2d 1445, 1448 (9th Cir. 1983).  The law permitted the Commission to hold the warrant in

abeyance until Coates' sentence had expired, at which time it executed the detainer.  See Boswell, 262 F. Supp. at 560-61 (finding that when parolee is arrested on another charge, execution of parole revocation warrant may be held in abeyance until intervening charge is disposed of and any intervening sentence is served); Heath v. United States Parole Comm'n, 788 F.2d 85, 91 (2d Cir. 1986); Russie, 708 F.2d at 1448 (finding that where valid parole violation warrant was issued against released prisoner before his sentence expired, Commission had power to execute warrant even after scheduled expiration date of the sentence).  Furthermore, it is well established that execution of a parole violation warrant may be lawfully delayed until after completion of the service of a new sentence.  See Moody v. Daggett, 429 U.S. 78, 87 (1976).  Accordingly, the court finds that the revocation hearing conducted on February 29, 1984 did not "constructively execute" Coates' warrant.

Assuming *arguendo* that the parole violation warrant was "constructively executed" by the revocation hearing on February 29, 1984 (see Doc. 10 at 5), "[i]t is well established that the erroneous execution of a parole violator warrant contrary to the instructions of the Parole Commission is invalid . . . ."  Gates v. DeRosa, No. Civ.A.03-6058, 2006 WL 477007, at *2 (D.N.J. Feb. 28, 2006) (citations omitted).  Pursuant to the Commission's explicit instructions, Coates' violator term was to "commence upon [his] release from state custody or upon federal reparole to [his] state sentence, whichever comes first."  (Doc. 7, Ex. 8.)  If Coates' parole violation warrant was "constructively executed" any time prior to the Commission's explicit

instructions, then that execution would be invalid and the Commission would have

the opportunity to withdraw the warrant, place it as a detainer, and execute the

warrant again at a later date.  <u>Gates</u>, 2006 WL 477007, at \*2; <u>see</u> <u>also</u> <u>Barnard v.

Henman</u>, 89 F.3d 373 (7th Cir. 1996); <u>Sinclair v. Henman</u>, 986 F.2d 407 (10th Cir.

1993).  Accordingly, Coates' argument that he has served his original ten-year

federal sentence is meritless.

      **B.**      <u>**Upward Departure from Reparole Guidelines**</u>

At the time Coates committed his original offense, the Commission utilized

different  parole and reparole guidelines.  <u>See</u> Paroling, Recommitting and

Supervising Federal Prisoners, 44 Fed. Reg. 26540-48 (May 4, 1979) (codified at 28

C.F.R. pt. 2).  Accordingly, Coates argues that the Commission improperly applied

to his case the reparole guidelines set forth in the Sentencing Reform Act of 1984

[SRA], Pub. L. No. 98-473, § 235(b), 98 Stat. 1837 (1984), and the amendments

thereto.  (Doc. 2 at 4.)  The court will construe this argument as an *ex post facto*

claim.  The Ex Post Facto Clause of the United States Constitution prohibits the

enactment of any law that "retroactively alter[s] the definition of crimes or

increase[s] the punishment for criminal acts."  <u>Allston v. Gaines</u>, 158 F. Supp. 2d 76,

81 (D.D.C. 2001) (citations omitted).  To prevail on an *ex post facto* claim Coates

must show: (1) that the law he is challenging "applies to conduct completed before

its enactment" and (2) "that it raises the penalty from whatever the law provided

when he acted."  <u>Johnson v. United States</u>, 529 U.S. 694, 699 (2000).

8

Several courts have held that the Commission's parole guidelines are not "laws" for purposes of *ex post facto* analysis.  See, e.g., Reynolds v. Williamson, No. Civ.A. 3:CV-04-2396, 2005 WL 3050154, at *5 (M.D. Pa. Nov. 14, 2005); Smith v. United States Parole Comm'n, 875 F.2d 1361, 1367 (9th Cir. 1989); Allston, 158 F. Supp. 2d at 83.  Recent decisions, however, have cast doubt on the notion that parole guidelines do not constitute laws for purposes of *ex post facto* analyses.[2]  See, e.g., Kyle v. Lindsay, Civ. A. No. 3:06-0948, 2007 WL 1450402 (M.D. Pa. May 15, 2007) (deciding that the "better practice" for courts is to "conduct a merits review irrespective of . . . whether parole guidelines are laws"); Bryant v. Williamson, Civ. A. No. 3:06-2082, 2007 WL 210792, at *2 (M.D. Pa. Jan. 25, 2007) (assuming "for the purpose of discussion that the [parole] guidelines are 'laws' in the context of the analysis of whether a violation of the Ex Post Facto Clause has occurred").  Given the uncertain state of the law in this regard, the court will conduct a substantive analysis of Coates' claim that the Commission's upward departure constituted an *ex post facto* violation.

---

[2] In United States *ex rel.* Forman v. McCall, 776 F.2d 1156 (3d Cir. 1985), the Third Circuit wrote that parole guidelines could constitute laws for purposes of the Ex Post Facto Clause "if they are applied without 'substantial flexibility.'"  Id. at 1158.  However, in Garner v. Jones, 529 U.S. 244, 253 (2000), the United States Supreme Court held that "[t]he presence of discretion does not displace the protections of the Ex Post Facto Clause."  Since Garner, federal courts have reached differing conclusions regarding the applicability of *ex post facto* analysis to parole or reparole guidelines.  See Kyle v. Lindsay, Civ. A. No. 3:06-0948, 2007 WL 1450402, at *3 (M.D. Pa. May 15, 2007), and cases cited therein.  The majority of cases, however, have undertaken a substantive analysis in lieu of deciding the antecedent question of whether the guidelines should be considered "laws."  Id.

Coates relies primarily on the Third Circuit's decision in <u>Lyons v. Mendez</u> for the proposition that "the U.S. Parole Commission improperly postponed his release date beyond the guideline range by relying on a 1987 amendment to the SRA." (Doc. 2 at 4); <u>see</u> <u>Lyons v. Mendez</u>, 303 F.3d 285 (3d Cir. 2002).  Coates, however, misconstrues the <u>Lyons</u> opinion, and his confinement does not fall within the Third Circuit's holding.  The petitioner in <u>Lyons</u> was convicted and sentenced for multiple offenses in 1986.  <u>Lyons</u>, 303 F.3d at 286.  At a parole hearing in 1996, the Commission determined that a parole eligibility date outside of the guideline range was warranted.  <u>Id.</u> at 287.  Pursuant to the SRA's original § 235(b)(3) enacted in 1984, the Commission was required to set a release date "within the range that applies to the prisoner under the applicable parole guideline."  <u>Id.</u> at 288 n. 3 (emphasis omitted).  However, prior to 1984, and after the 1987 amendment to SRA § 235(b)(3), the Commission was permitted to depart from the guideline range for "good cause."  <u>Id.</u> nn. 4,5; <u>see</u> <u>also</u> Parole Commission and Reorganization Act, P.L. 94-233, 90 Stat. 219 (1976) (codified at 18 U.S.C. § 4201 *et seq.*).  Because Lyons' conviction and sentencing occurred between the SRA's enactment in 1984 and amendment in 1987, the Third Circuit was required to determine "on what date . . . the SRA's original § 235(b)(3) t[ook] effect."  <u>Lyons</u>, 303 F.3d at 288.  The Third Circuit held that "the original § 235(b)(3) took effect upon enactment and thus the 1987 amendment operated as an *ex post facto* law when it was applied to postpone his release date beyond his maximum guideline range of 148 months."  <u>Id.</u>

Unlike the petitioner in <u>Lyons</u>, Coates' original conviction and sentence did not occur between 1984 and 1987, but rather in 1975, and his parole violation occurred in 1982.  (<u>See</u> Doc. 7 at 2.)  Coates, therefore, does not fall within the SRA's original § 235(b)(3), which required the Commission to set a prisoner's release date within the guideline range.[3]

Prior to the Parole Commission and Reorganization Act, P.L. 94-233, 90 Stat. 219 (1976) (codified at 18 U.S.C. § 4201 *et seq.*), the federal Board of Parole was not required to set parole release dates within specified guidelines, but was instead given discretion in setting the terms and conditions of release and modifying the parole terms for prisoners who violated their original parole.  <u>See</u> Act of June 25, 1948, P.L. 80-772, 62 Stat. 683, 854-55, <u>repealed</u> <u>by</u> Parole Commission and Reorganization Act, P.L. 94-233, 90 Stat. 219 (1976).  Coates' argument regarding the application of the Commission guidelines to his reparole hearing is therefore unavailing.

## C.   **Concurrence with State Sentence**

Coates alleges that the 1,771 days that remained on his federal sentence when his parole was revoked should have run concurrently with his state sentence.  (Doc. 10 at 7.)  According to Coates, the Commission relied on regulations that "denied

---

[3] In <u>United States *ex rel.* D'Agostino v. Keohane</u>, 877 F.2d 1167 (3d Cir. 1989), the Third Circuit rejected an argument similar to that of Coates, holding that the Commission's upward departure from the parole guidelines was not an *ex post facto* violation for a prisoner originally sentenced in 1982 for crimes committed in the 1970's.

[Coates] the opportunity to serve the remainder of his federal sentence concurrently with his state sentence" in violation of the Constitution's Ex Post Facto Clause.  (Id.)  This claim is without merit.  Prior to 1976, the Commission was permitted to either: (1) execute a warrant immediately, running the remainder of the original federal sentence concurrently with the subsequent sentence; (2) dismiss the warrant and detainer altogether; or (3) defer the decision on parole revocation until expiration of a subsequent sentence.  See Moody v. Daggett, 429 U.S. 78, 82-85 (1976) (discussing the Parole Commission and Reorganization Act, Pub. L. 94-233, 90 Stat. 219 et seq. (1976), and the Commission's procedures prior to 1976).  Furthermore, pursuant to Section 4210 of Title 18 of the United States Code, the Commission was explicitly granted authority to run a parole violator term consecutive to a sentence imposed upon a parole violator for a new offense.  18 U.S.C. § 4210(b)(2) provides as follows:

> [I]n the case of a parolee who has been convicted of a . . . crime committed subsequent to his release on parole, and such crime is punishable by a term of imprisonment, detention or incarceration in any penal facility, the Commission shall determine, in accordance with the provisions of section 4214(b) or (c), whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense, but in no case shall such service together with such time as the parolee has previously served in connection with the offense for which he was paroled, be longer than the maximum term for which he was sentenced in connection with such offense.

18 U.S.C. § 4210(b)(2) (1976).  Thus, in the present matter, the Commission was fully authorized to run Coates' new sentence consecutive to his unexpired term.

Coates acknowledges that he was transferred from state custody to federal custody on September 30, 2005.  (Doc. 7, Ex. 12.)  The BOP calculated Coates' full-term date as August 5, 2010.  (Doc. 7, Ex. 1); see also Amirr v. United States, 301 F.2d 662, 662 (3d Cir. 1962) ("[W]here a federal court imposes a sentence upon a defendant who is, at that time, in state custody, the federal sentence begins to run when the defendant is received, after his release by the state authorities, at the 'penitentiary, reformatory, or jail for service of said sentence.'").  When calculating Coates' release date, the BOP did not give Coates credit for the time he spent in state custody.  (Doc. 7, Ex. 1).  The decision to grant or deny this type of credit is within the purview of the Commission.  See Garafola v. Wilkinson, 721 F.2d 420, 422-26 (3d Cir. 1983); see also Tucker v. Carlson, 925 F.2d 330, 331-33 (9th Cir. 1991). The court cannot overturn this decision unless it lacked all rational basis.  See Funari, 218 F.3d at 254.  Coates' actions while on parole and his history of drug use provide a rational basis for the Commission's decision and the court will not disturb that decision.

### D. Procedural Arguments

Coates also asserts that the following procedural flaws in the Commission's processes entitle him to an early release:  (1) he was denied counsel at his dispositional and revocation hearings, (2) the Commission failed to conduct a revocation hearing within ninety days of his release into federal custody, and (3) he was impermissibly denied statutory good time credit.  The court will discuss these issues *seriatim.*

1.    **Right to Counsel at Dispositional and Revocation Hearings**

Coates alleges that he was "denied counsel in respect to . . . dispositional and revocation hearing(s) in violation of the case and statutory law(s) as cited by the respondent." (Doc. 10 at 2.) The court finds this argument unavailing. As a threshold matter, the court notes that Coates was represented by an assistant federal public defender at his dispositional revocation hearing on February 29, 1984. (See Doc. 7, Ex. 7.) In addition, Coates was represented by a different assistant federal public defender for his ten-year reconsideration hearing held on November 11, 1994. (See Doc. 7, Ex. 9.) Moreover, with respect to any other hearing where Coates actually proceeded without counsel, the court notes that there is no absolute right to counsel, or the appointment of counsel (if indigent), in parole revocation proceedings. See Gagnon v. Scarpelli, 411 U.S. 778, 790 (1973); Morrissey v. Brewer, 408 U.S. 471, 487-89 (1972); Burgess v. Holt, No. 3:CV-06-1954, 2007 WL 2212811, at *7 (M.D. Pa. July 31, 2007); Riley v. Myers, No. CIV.A. 01-6958, 2002 WL 31845865, at *7 (E.D. Pa. Dec. 18, 2002). Accordingly, the court finds that Coates was not denied counsel in violation of the United States Constitution.

2.    **Commission's Failure to Provide a Revocation Hearing within Ninety Days After Retaking Coates**

Coates further alleges that "the failure to provide or conduct a revocation hearing within ninety (90) days of petitioner's release into federal custody constitutes another violation." (Doc. 10 at 4.) The court will construe this as a due process claim. The record reveals that Coates' parole violation warrant was

14

executed on September 30, 2005 when he was returned to the Commission's custody.  (Doc. 7, Ex. 12.)  Coates was not provided a hearing until May 3, 2006.  (Doc. 7, Ex. 13.)  This delay of over 200 days exceeds the 90-day requirement provided in 18 U.S.C. § 4214.  See 18 U.S.C. § 4214(c) (1987) ("Any alleged parole violator who is summoned or retaken by warrant . . . shall receive a revocation hearing within ninety days of the date of retaking.").  However, several courts have held that "delay, per se, does not constitute a violation of due process entitling an accused violator to immediate release where the parolee has . . . been afforded the revocation hearing and the facts of the violation fairly adjudicated."  McNeal v. United States, 553 F.2d 66, 68 (10th Cir. 1977); see also Thomas v. United States Parole Comm'n, Civ. A. No. 92-590, 1992 U.S. Dist. LEXIS 11663, at *6 (D.D.C. Aug. 4, 1992) (same).

In order to obtain habeas relief on this due process claim, Coates must show not only that the delay in holding a revocation hearing was unreasonable, but also that the delay was prejudicial.  See Stokes v. Pa. Bd. of Prob. and Parole, Civ. A. No. 1:04-1513, 2005 U.S. Dist LEXIS 44065, at *14 (M.D. Pa. May 9, 2005); Watlington v. Hendricks, Civ. A. No. 04-942, 2006 U.S. Dist. LEXIS 27421, at *28-29 (D.N.J. Apr. 26, 2006).  The court finds that Coates has not shown that the Commission's delay in conducting a revocation hearing was prejudicial.  Coates received an appropriate hearing on February 29, 1984.  (See Doc 7, Ex. 7.)  He was represented by counsel.  (Id.)  Coates' parole was revoked based on this hearing, and the Commission ordered the unexpired portion of Coates' federal sentence to commence upon his

release from state custody or on reparole to his state sentence.  (Doc. 7, Ex. 8.)

When the Commission's warrant was executed on September 30, 2005, Coates

began serving the remaining 1,771 days that he was ordered to serve by the

Commission.  Because the Commission had already made its revocation decision

and executed its warrant, Coates was not prejudiced from the Commission's delay

in holding a statutory interim hearing on May 3, 2006.  (See Doc. 7, Ex. 13.)

Accordingly, the court finds Coates' due process claim unavailing.

### 3.   <u>Denial of Statutory Good Time Credits</u>

Coates alleges that he "comes under . . . 18 United States Code, § 4161-4166 -

pre 1984 Sentencing Reform Act - where a prisoner received statutory goodtime

[sic]" and that he is therefore entitled to receive a credit of ten days for each month

of his incarceration.  (Doc. 2 at 5.)  Construing this as an *ex post facto* claim, the

court finds this argument meritless.  Prior to its repeal in 1984,[4] 18 U.S.C. §

4161provided:

> Each prisoner convicted of an offense against the United States and confined
> in a penal or correctional institution for a definite term other than for life,
> *whose record of conduct shows that he has faithfully observed all the rules and
> has not been subjected to punishment,* shall be entitled to a deduction from the
> term of his sentence beginning with the day on which the sentence
> commences to run . . . .

18 U.S.C. § 4161(1975) (emphasis added).  Furthermore, the pre-1984 good time

statutory provisions provided: "[i]f during the term of imprisonment a prisoner

---

[4] <u>See</u> Sentencing Reform Act of 1984, Pub. L. No. 98-473, Title II, § 235(a),
Oct. 12, 1984, 98 Stat. 2027 (repealing 18 U.S.C. § 4161 effective Nov. 1, 1986).

16

commits any offense or violates the rules of the institution, all or any part of his earned good time credit may be forfeited."  18 U.S.C. § 4165 (1975).  Although the record does not contain a history of Coates' behavior while imprisoned from 1975 until his original parole in 1980, the record clearly indicates that from 1984 through 1992 Coates was involved in at least nine incidents that could be considered institutional violations.  (See Doc. 7, Ex. 9.)  The Third Circuit has recognized that under 18 U.S.C. §§ 4161, 4165-4166, prison authorities were granted the discretion to both forfeit earned good time for rules infractions and to restore forfeited good time.  See Rusher v. Arnold, 550 F.2d 896, 898-99 (3d Cir. 1977); see also United States ex rel. Weyhrauch v. Parker, 268 F. Supp. 785, 787 (M.D. Pa. 1967) ("The matter of . . . withholding or cancelling good time of a Federal prisoner is a matter for the determination of the prison authorities . . . .") (citation omitted).  Accordingly, the court will defer to the Commission's decision to revoke any good time credits that Coates may have earned.  See Keitt v. United States Parole Comm'n, No. 06-3802, 2007 U.S. App. LEXIS 13672, at *6 (3d Cir. June 8, 2007) ("[T]he district court's review of a Commission decision is limited to whether there is a rational basis in the record for the Commission's statement of reasons for denial of parole.").

**III.** **<u>Conclusion</u>**

For the foregoing reasons, the court will dismiss Coates' petition for writ of

habeas corpus.  An appropriate order will issue.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:      October 24, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LEROY W. COATES,** | : | **CIVIL ACTION NO. 1:07-CV-0424** |
| **Petitioner** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **KAREN F. HOGSTEN, Warden,** | : | |
| **Respondent** | : | |

## ORDER

AND NOW this 24th day of October, 2007, for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1.   The petition for a writ of habeas corpus (Doc. 1) is DISMISSED.

2.   Any appeal from this order is DEEMED frivolous and not in good faith.
     See 28 U.S.C. § 1915(a)(3).

3.   The Clerk of Court is directed to CLOSE this case.


　　 S/ Christopher C. Conner　　
CHRISTOPHER C. CONNER
United States District Judge